IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BERTHA MARENTES,

       Plaintiff,

v.                                                                  Civ. No. 20-315 GBW

KILOLO KIJAKAZI,
*Acting Commissioner of the*
*Social Security Administration,*

       Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI"). *Doc. 19.* For the reasons explained below, the Court DENIES Plaintiff's motion and AFFIRMS the judgment of the SSA.

### I.  PROCEDURAL HISTORY

Plaintiff filed initial applications for SSDI and SSI on September 19, 2017, alleging disability beginning June 23, 2017. Administrative Record ("AR") at 65–67. Plaintiff's applications were denied on initial review on March 2, 2018, and again on reconsideration on June 18, 2018. AR at 77–78, 89–90, 104–05, 119–20. On March 6,

2019, a hearing was held by an Administrative Law Judge ("ALJ").  AR at 35–64.  The

ALJ issued an unfavorable decision on May 6, 2019.  AR at 7–21.

Plaintiff requested review by the Appeals Council on May 6, 2019, and the

Appeals Council denied the request on March 19, 2020.  AR at 1.  Plaintiff filed suit in

this Court on April 8, 2020, seeking review of the ALJ's decision.  *Doc. 1.*

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*,

933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither

reweigh the evidence nor substitute our judgment for that of the agency."  *Bowman v.*

*Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.3d at 800 (internal quotation marks omitted).  "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must

discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects."  *Id.* at 1010.  "The possibility of drawing

two inconsistent conclusions from the evidence does not prevent [the] findings from

being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007).

### III.   ALJ EVALUATION

#### A.  Legal Standard

For purposes of both Social Security Disability Insurance benefits and

Supplemental Security Income, an individual is disabled when he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 1382c(a)(3)(A).  To determine whether a person satisfies these criteria, the SSA

has developed a five-step test.  *See* 20 C.F.R. § 404.1520.[1]  If the Commissioner finds an

individual disabled at any step, the next step is not taken.  *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he

is not engaged in "substantial gainful activity"; (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

---

[1] Plaintiff has applied for both SSDI and SSI.  The five-step test for determining disability is the same for both types of benefits, although the test is codified in two separate sections of the Code of Federal Regulations.  20 C.F.R § 404.1520 governs SSDI; § 416.920 governs SSI.

expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id*. § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in

the national economy, considering the claimant's RFC, age, education, and work

experience.  *Grogan*, 399 F.3d at 1261.

   **B.  The ALJ's Decision**

On May 6, 2019, the ALJ issued a decision denying Plaintiff's application for

SSDI and SSI.  *See* AR at 10–21.  In denying Plaintiff's application, the ALJ applied the

five-step sequential analysis.  At step one, the ALJ found that Plaintiff had not engaged

in substantial gainful activity since the disability onset date of June 23, 2017.  AR at 12.

At step two, the ALJ determined that Plaintiff had the severe impairments of

"rheumatoid arthritis, left knee osteoarthritis with total knee replacement, degenerative

disc disease, and fibromyalgia."  AR at 13.  The ALJ determined that the following

impairments were medically determinable but non-severe: hypothyroidism, obstructive

sleep apnea, asthma, diabetes, depression, and anxiety.  *Id*.  At step three, the ALJ found

that none of Plaintiff's impairments, singly or in combination, met or medically equaled

the severity of an impairment in the Listings.  AR at 14.

At step four, the ALJ assessed Plaintiff with the RFC to perform light work as

defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following additional limitations:

> she can lift, carry, push and pull up to 20 pounds occasionally and up to
> 10 pounds frequently; can occasionally climb ramps and stairs, stoop,
> crouch, kneel, crawl, and balance; can never climb ladders, ropes, or
> scaffolds, and can have no exposure to unprotected heights, hazardous
> machinery, or concentrated exposure to environmental irritants; can
> frequently finger, handle, and feel bilaterally; can occasionally use foot

controls bilaterally; can occasionally reach overhead bilaterally; and
cannot perform fast paced production work.  Additionally, the claimant is
limited to 4 hours of standing and walking.

AR at 15.  Also at step four, the ALJ found that Plaintiff could perform her past relevant

work as a nursery school attendant.  AR at 19.

In the alternative, the ALJ made a step five finding that Plaintiff could perform

other work existing in significant numbers in the national economy, including as a

cashier II (Dictionary of Occupational Titles ("DOT") No. 211.462-010), router (DOT No.

222.587-038), and furniture rental clerk (DOT No. 295.357-018).  AR at 20.  Therefore, the

ALJ concluded that Plaintiff was not disabled from June 23, 2017, through the date of

her decision.  AR at 21.

## IV.   PARTIES' POSITIONS

Plaintiff asserts that the ALJ made findings that were inconsistent with and

unsupported by the evidence in (1) her RFC determination, (2) her determination at step

four that Plaintiff could return to past relevant work, and (3) her reliance at step five on

testimony of the vocational expert ("VE") that was inconsistent with the DOT.  *See*

*generally doc. 20.*[2]

---

[2] In her reply, Plaintiff raises new arguments pertaining to the ALJ's reliance on state agency medical
opinions that "consist primarily of box-check or word-circle forms" and on "minimal observations of
some level of improvement."  *Doc. 23* at 4.  As these arguments were not presented in Plaintiff's motion,
they are deemed waived.  *In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1112 n.5 (10th Cir.
2017) ("[A]rguments raised for the first time in a reply brief are waived.").

Defendant responds that the ALJ's decision should be affirmed, because (1) her RFC determination was supported by substantial evidence, (2) the step-four error was rendered harmless by her step-five finding, and (3) she properly relied on the VE's testimony at step five.  *See generally doc. 22.*

V.    ANALYSIS

A.  <u>**The ALJ's RFC Determination Was Legally Proper and Supported by Substantial Evidence.**</u>

Plaintiff raises several arguments for finding that the ALJ's RFC analysis was erroneous.  The RFC assessment is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p, 1996 WL 374184, at *3.  In assessing a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).  While an ALJ "need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative."  *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (internal quotation marks omitted).  But where "we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's decision do not dictate reversal."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

1. *The Limitation to Light Work with Additional Standing and Walking Limitations Was Proper.*

First, Plaintiff contends that the ALJ erred in limiting her to light work, which requires standing and walking for up to six hours in a workday, with an additional limitation to four hours of standing and walking. *Doc. 20* at 8–9. Plaintiff contends that the additional limitation in standing and walking required limiting her to sedentary work. *Id.* at 9; *see also id.* at 13. In response, Defendant cites Social Security Rule 83-12 to argue that the ALJ's treatment of the standing and walking limitation was proper. *Doc. 22* at 14–15.

Social Security Ruling 83-12 provides that when "an individual's exertional RFC does not coincide with the definition of any one of the ranges of work" set forth in 20 C.F.R. §§ 404.1567 and 416.967, the ALJ "will consider the extent of any erosion of the occupational base," which may require testimony from a VE. SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). While light work requires up to six hours of standing and walking, sedentary work requires only two hours of standing and walking. SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983). Because the ALJ found that Plaintiff's RFC for standing and walking falls between the defined ranges of sedentary and light work, the ALJ limited Plaintiff to light work with additional limitations and sought testimony from a VE concerning the erosion of the occupational base available to Plaintiff. This procedure was legally proper. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)

(finding no error where the ALJ sought VE testimony to address limitations falling between two ranges of work).

> 2. *The Limitation to Four Hours of Standing and Walking Was Supported by Substantial Evidence.*

Plaintiff next argues that the limitation to four hours of standing and walking is not supported by substantial evidence. *Doc. 20* at 9. Plaintiff points to evidence of gait and balance deficits, weakness and instability in the knees and ankles, knee pain, knee buckling and recurrent falls, difficulty wearing shoes and bearing weight on her feet, difficulty rising from a seated position, toe and foot numbness, foot and ankle swelling, prescriptions for medical devices, x-rays showing degenerative joint disease in the feet and heel spurs, and a self-reported inability to stand for more than thirty minutes or walk for more than ten. *Id*. Plaintiff argues that the ALJ failed to discuss the uncontroverted evidence she chose not to rely on and the significantly probative evidence she rejected. *Id.* (quoting *Hedron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014)).

The ALJ's decision indicates that she properly considered all of the evidence on which Plaintiff relies. Regarding the evidence of imbalance, weakness, instability, and pain in Plaintiff's knees, it is important to note that Plaintiff underwent a total left knee replacement on June 29, 2017, at the beginning of the alleged period of disability. *See* AR at 541. The ALJ discussed this surgery as well as the post-operative physical therapy records showing that, by December 2017, Plaintiff's condition had so improved

that she had normal gait, satisfactory range of motion, and no complaints of pain during the session.  AR at 17 (citing, *inter alia*, AR at 542).  In light of this evidence, the ALJ was not required to discuss medical records predating Plaintiff's surgery as they pertained to Plaintiff's knee problems.  *See, e.g.,* AR at 514–15 (reporting Plaintiff's complaints of knee instability and buckling on April 21, 2017); AR at 516–19 (evaluation performed April 27, 2017, at which Plaintiff was prescribed knee braces); AR at 592 (preoperative appointment on June 12, 2017, at which Plaintiff was observed to have antalgic gait, limited range of motion, and diffuse pain).  Additionally, medical records pertaining to Plaintiff's post-surgery recovery are not probative of the existence of an impairment lasting twelve months or longer.  *See, e.g.,* AR at 432 (noting need for shower chair and raised toilet seat for post-surgery recovery).

Regarding Plaintiff's foot pain, numbness, and swelling, the ALJ included this evidence in her discussion of the symptoms of Plaintiff's rheumatoid arthritis and fibromyalgia.  AR at 16.  The ALJ discussed records showing that Plaintiff experienced pain and swelling in her feet.  *Id.* (citing AR at 651).  She also discussed records showing intact neurological sensation in the feet.  AR at 17 (citing AR at 483, 648).  She discussed x-ray records showing that Plaintiff had mild degenerative joint disease of the feet with spurs.  AR at 16 (citing AR at 727–29).  She also discussed records showing that steroid injections and methotrexate provided relief.  *Id.* (citing AR at 797, 808).  In sum, the ALJ

did not fail to consider the evidence of foot pain, swelling, and numbness.  In light of

the relief Plaintiff received with treatment, the ALJ's conclusions were supported by

substantial evidence.

"The possibility of drawing two inconsistent conclusions from the evidence does

not prevent [the ALJ's] findings from being supported by substantial evidence." *Lax*,

489 F.3d at 1084.  While the evidence in the record might support greater limitations

than the ALJ assessed, the ALJ's findings were nonetheless supported by substantial

evidence in the record.

> 3.  <u>The Limitation to Frequent Handling, Fingering, and Feeling Was Supported by Substantial Evidence.</u>

Plaintiff argues that the ALJ erred in finding that Plaintiff could frequently

handle, finger, and feel with both hands.  *Doc. 20* at 10; *see also id.* at 13–14.  As with the

standing and walking limitation, Plaintiff argues that the ALJ's finding was not

supported by substantial evidence.  *Id.* at 11.  Plaintiff also argues that the ALJ failed to

give specific reasons for rejecting Plaintiff's subjective complaints of reduced use of the

hands.  *Id.*

As with Plaintiff's foot pain, the ALJ discussed the evidence of hand pain when

considering the symptoms of Plaintiff's rheumatoid arthritis and fibromyalgia.  AR at

16.  The ALJ discussed records showing that Plaintiff experienced pain and swelling in

her hands.  *Id.* (citing AR at 651).  She also discussed records showing no abnormalities

in Plaintiff's hands upon examination and 5/5 muscle strength in all major muscle groups. *Id.* (citing AR at 425–26); AR at 17 (citing, e.g., AR at 616). She discussed x-ray records showing erosive arthropathy in Plaintiff's hands. *Id.* (citing AR at 727–29). She also discussed records showing that methotrexate provided relief. *Id.* (citing AR at 808). In sum, the ALJ did not fail to consider the evidence of limitations in hand usage. In light of the relief Plaintiff received with treatment, the ALJ's conclusions were supported by substantial evidence.

Regarding Plaintiff's subjective complaints, the ALJ's symptom evaluation was proper. The ALJ must follow a two-step process for evaluating a claimant's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). The ALJ first determines "whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms" and then evaluates the "intensity, persistence, and limiting effects" of the symptoms. *Id.* at *3–4. In evaluating a claimant's symptoms, the ALJ must articulate "specific reasons" that are "closely and affirmatively linked" to evidence in the record and "not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citations omitted). Factors for consideration include:

(1) The claimant's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate or aggravate the symptoms;

(4) The type, dosage, effectiveness, and side effects of any medication the
claimant takes or has taken to alleviate symptoms;

(5) Treatment, other than medication, the claimant receives or has
received for his symptoms;

(6) Any measures other than treatment the claimant uses or has used to
alleviate his symptoms;

(7) Any other factors concerning the individual's functional limitations
and restrictions due to his symptoms.

20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *7–8. The Tenth

Circuit has explained that the symptom evaluation "does not require a formalistic

factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific

evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are

satisfied." *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Tuttle v. Comm'r,*

*SSA*, 853 F. App'x 246, 251 & n.5 (10th Cir. 2021) (applying the *Kepler* standard after SSR

16-3p removed the word "credibility" from the SSA's sub-regulatory policy).

In assessing Plaintiff's symptoms, the ALJ considered her daily activities and

found them inconsistent with her complaints of disabling symptoms. AR at 16. The

ALJ considered the presence of diffuse pain consistent with fibromyalgia. *Id*. The ALJ

considered the effectiveness of methotrexate and steroid injections in relieving

Plaintiff's joint pain. *Id*. The ALJ considered evidence that Plaintiff had some

tenderness but full range of motion in her wrists and fingers. *Id*. Based upon this

evidence, the ALJ concluded that "the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

The ALJ's conclusions concerning Plaintiff's ability to handle, finger, and feel with both hands were supported by substantial evidence, and her reasons for discounting Plaintiff's subjective complaints were specific and closely and affirmatively linked to evidence in the record.

4. <u>The Omission of Frequent Rest Breaks from the RFC Was Supported by Substantial Evidence.</u>

Finally, Plaintiff argues that the ALJ failed to consider evidence of fatigue and a need for frequent rest breaks to elevate her legs. *Doc. 20* at 11–12; *see also id.* at 14. Plaintiff contends that the ALJ failed to give specific reasons for rejecting Plaintiff's subjective reports of fatigue and the need for frequent breaks. *Doc. 20* at 11. Plaintiff further contends that the ALJ failed to consider the combined effect of Plaintiff's medically determinable impairments. *Doc. 20* at 12 (citing *Wells*, 727 F.3d at 1065, and SSR 96-8p).

The evidence of fatigue on which Plaintiff principally relies are subjective reports in her application and at the hearing. *Doc. 20* at 11 (citing AR at 54–55, 286, 293, 296). The ALJ's consideration of this evidence may be gleaned from her determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in

the record." AR at 16.  In arriving at this determination, the ALJ described Plaintiff's

daily activities, which the ALJ found conflicted with her reported limitations. *Id*.

Although the ALJ did not specifically mention "fatigue" in her decision, "merely

technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695

F.3d at 1166.  Because the Court can follow the ALJ's reasoning, it does not find any

error in the ALJ's failure to specifically discuss Plaintiff's subjective reports of fatigue.

Regarding the medical evidence, Plaintiff cites records that relate her fatigue to

depression and anxiety. *Doc. 20* at 11 (citing AR 421–427, 669–672, 761–766).  The ALJ

properly considered the evidence of mental impairments throughout the sequential

evaluation.  At step two, the ALJ reviewed Plaintiff's mental functioning and found

only mild limitations in such functional areas as applying information, concentrating,

and managing oneself.  AR at 13–14.  Thus, the ALJ concluded that Plaintiff's

depression and anxiety did "not cause more than minimal limitation in the claimant's

ability to perform basic mental work activities."  AR at 13.  The ALJ noted that these

limitations are not an RFC analysis but that her RFC analysis "reflects the degree of

limitation" assessed.  AR at 14.  At the RFC stage, the ALJ considered the medical

records relating to Plaintiff's mental impairments, noting no evidence of limitations in

Plaintiff's memory, higher cognitive functions, or concentration.  AR at 18.  Ultimately,

the ALJ concluded that no mental limitations needed to be included in the RFC.  AR at

15.  From the ALJ's discussion of Plaintiff's mental impairments, it is clear that the ALJ found no work-related limitations associated with fatigue.  Based on the evidence cited by the ALJ when assessing Plaintiff's mental limitations, this finding was supported by substantial evidence.

Regarding Plaintiff's self-reported need for rest breaks to elevate her legs, the ALJ's opinion is clear from her overall discussion of Plaintiff's physical impairments and subjective complaints, as recounted above.  While acknowledging and incorporating into the RFC several limitations in Plaintiff's use of her legs, the ALJ found that Plaintiff's subjective reports were not entirely credible to support greater limitations, which include frequent rest breaks to elevate her legs.  AR at 17.  This finding was legally proper and supported by substantial evidence.

**B.**  **The ALJ Erred at Step Four, But Such Error Was Rendered Harmless when the ALJ Proceeded to Step Five.**

Plaintiff asserts error in the ALJ's step-four finding that Plaintiff could return to past relevant work.  *Doc. 20* at 12–17.  At the hearing, the ALJ posed a hypothetical question to the VE that omitted a limitation on standing and walking to four hours per workday.  AR at 57–58.  Based on this hypothetical, the VE testified that Plaintiff could return to her past relevant work as a nursery school attendant.  AR at 58.

Defendant concedes that it was error to rely on the VE's testimony where the ALJ's hypothetical question did not include all of the limitations in Plaintiff's RFC.  *Doc.*

22 at 20.  Defendant asserts that this error was harmless because the ALJ proceeded to step five of the sequential evaluation.  *Id*.  Errors at step four are rendered harmless where the ALJ makes a proper alternative finding at step five.  *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994); *Jones v. Berryhill*, 720 F. App'x 457, 459 (10th Cir. 2017) (unpublished).

After questioning the VE about Plaintiff's past relevant work, the ALJ asked whether there were other jobs in the national economy that Plaintiff could perform.  AR at 58.  At this point, the ALJ added a limitation to four hours of standing and walking.  AR at 59.  Based on this additional limitation, the VE supplied the positions of cashier II, router, and furniture rental clerk.  *Id*.  Thus, absent any harmful errors in the ALJ's step-five finding, the ALJ's error at step four cannot provide a basis to remand.

C. **The ALJ's Step-Five Analysis Was Legally Proper and Supported by Substantial Evidence.**

1. *The ALJ Did Not Err in Asking the VE Whether the Jobs She Listed Could Accommodate a Limitation to Four Hours of Standing and Walking.*

In asserting that the ALJ erred at step five, Plaintiff first takes issue with the ALJ's use of the word "accommodate" in her questions to the VE.  *Doc. 20 at 17*.  The ALJ asked the VE whether there are "jobs at the light level that could accommodate the four hours of standing and walking."  AR at 59.  Plaintiff contends that the use of the word "accommodate" indicates "special accommodations" and thus fails to address

17

whether Plaintiff can perform a job "as it is usually performed." *Doc. 20* at 18.

Defendant responds that there is no reason to suppose that "the ALJ intended to use

[the term 'accommodate'] as a term-of-art rather than to generally mean 'account for.'"

*Doc. 22* at 22.  Plaintiff replies that Defendant's argument is a post-hoc rationalization

and that "[t]here is no basis for finding that the ALJ did not mean exactly what she

said." *Doc. 23* at 5.

The Court agrees with Defendant that the ALJ was apparently using the word

according to its ordinary meaning, which is "to provide with something desired,

needed, or suited" or "to allow for." *Accommodate*, Merriam-Webster Dictionary Online

(last visited Aug. 17, 2021).  The ALJ's use of the word does not suggest "special"

accommodation, as Plaintiff argues.  *See doc. 20* at 18; *doc. 23* at 4–5.  If it did, Plaintiff

would not have needed to add the word "special" to it.  There is no indication that

either the ALJ intended or the VE interpreted the use of the term to indicate

accommodations above and beyond what a job tolerates as generally performed.

Interpreting the ALJ's question in this manner is not a post-hoc rationalization.

The rule against post-hoc rationalizations prevents a court from upholding an agency

decision on grounds not relied on by the agency itself.  *SEC v. Chenery Corp.*, 318 U.S. 80,

95 (1943).  It applies only to matters that Congress has "exclusively entrusted to agency

determination." *Iglesia Pentecostal Casa de Dios para las Naciones, Inc. v. Duke*, 718 F.

App'x 646, 653 (10th Cir. 2017) (unpublished); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency *alone* is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.") (emphasis added).  Interpreting a person's meaning from her words falls within the Court's accustomed domain.  The Court is not prevented from resolving this dispute of interpretation in the agency's favor.  *See, e.g., San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1051–53 (10th Cir. 2011) (finding that *Chenery* poses no bar to accepting the agency's "more natural reading" of an arguably ambiguous record).  To hold otherwise would put the SSA's ALJs to the task of explaining their every utterance, lest their words be amenable to unfavorable interpretations.  Such a result is beyond the scope of the *Chenery* rule.

> 2. <u>The ALJ Did Not Incorporate a Limitation to Sitting and Standing at Will in the RFC, and Therefore the VE's Responses on that Subject Cannot Establish Reversible Error.</u>

Plaintiff's next argument is that the VE did not explain the basis for her opinion that the jobs propounded under step five could be performed with the option to sit and stand at will.  *Doc. 20* at 18–19.  At the hearing, Plaintiff's counsel asked the VE whether a person could hypothetically perform the jobs she had mentioned if she needed to be able to sit and stand at will.  AR at 60–61.  The VE responded that the position of furniture rental clerk would not permit sitting and standing at will but the positions of

cashier II and router would.  AR at 61.  The VE explained that her response was based

on her experience and her analysis of the cashier II position.  *Id*.

The ALJ did not include in the RFC any requirement that Plaintiff be permitted

to sit and stand at will.  Because the ALJ did not adopt the VE's testimony as to the

option to sit and stand at will, there can be no reversible error in the VE's testimony on

this subject.

### 3.   *The ALJ Properly Relied on VE Testimony at Step Five.*

Plaintiff also argues that the VE's testimony is inconsistent with the DOT because

the jobs propounded under step five were all categorized as light work (which requires

standing or walking for up to six hours of an eight-hour workday) and unskilled (of

which "relatively *few* . . . light jobs are performed in a seated position").  *Doc. 20* at 19;

*see* SSR 83-10, 1983 WL 31251, at *5–6.  Plaintiff reasons that the jobs propounded by the

VE must require more than four hours of standing and walking based on the definition

of light work provided in the DOT.  *Doc. 20* at 19–20.

Social Security Ruling 00-4p instructs that "[o]ccupational evidence provided by

a VE . . . generally should be consistent with the occupational information supplied by

the DOT."  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The Ruling further

instructs that "[w]hen there is an *apparent* unresolved conflict" between the DOT and

the VE's testimony, the ALJ "must elicit a reasonable explanation for the conflict" from

20

the VE before relying on the VE's testimony. *Id.* (emphasis added). If the VE's

explanation is reasonable, the ALJ may properly rely on the VE's testimony rather than

the DOT. *Id.* However, the ALJ may not rely on a VE's testimony if it is "based on

underlying assumptions or definitions that are inconsistent with [the SSA's] regulatory

policies or definitions," including the exertional classifications of work. *Id.* at *3. The

DOT defines "light work" as requiring

> [e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of
> force frequently, and/or a negligible amount of force constantly . . . to
> move objects. . . . Even though the weight lifted may be only a negligible
> amount, a job should be rated Light Work: (1) when it requires walking or
> standing to a significant degree; or (2) when it requires sitting most of the
> time but entails pushing and/or pulling of arm or leg controls; and/or (3)
> when the job requires working at a production rate pace entailing the
> constant pushing and/or pulling of materials even though the weight of
> those materials is negligible.

*DOT*, App. C.IV, 1991 WL 688702 (Jan. 1, 2016). The SSA's regulations largely mirror

this definition. *See* 20 C.F.R. § 404.1567(b).

Plaintiff reasons that the jobs propounded by the VE must require the maximum

six hours of standing and walking by process of elimination, because the ALJ excluded

Plaintiff from work at a production rate pace and the jobs of cashier II, router, and

furniture rental clerk do not involve the pushing and/or pulling of arm or leg controls.

*Doc. 20* at 20. In making this argument, Plaintiff elides the first part of the definition of

"light work," which centers on lifting requirements. Only when the weight lifted is a

"negligible amount" does a job constitute "light work" solely on the basis of a

significant amount of standing and walking.  *DOT*, App. C.IV, 1991 WL 688702; *see also*

20 C.F.R. § 404.1567(b) ("Even though the weight lifted may be very little, a job is in this

category when it requires a good deal of walking or standing . . . .").  The ALJ's RFC

determination did not restrict Plaintiff's lifting ability beyond what is required of light

work, and Plaintiff did not raise any point of error regarding her lifting ability.

Moreover, the DOT descriptions for the jobs of cashier II and router do not

contain any indication that they require a good deal of standing or walking.[3]  The

position of router requires labelling packages to indicate delivery routes.  *DOT 222.587-*

*038 Router*, 1991 WL 672123 (Jan. 1, 2016).  The position of cashier II requires receiving

cash in payment for goods or services, recording amounts received, and making

change.  *DOT 211.462-010 Cashier II*, 1991 WL 671840 (Jan. 1, 2016).  There is no *apparent*

conflict between the DOT and the VE's testimony that a person limited to four hours of

standing and walking could perform these jobs.  Thus, the ALJ was not required to elicit

a reasonable explanation on this topic and was permitted to rely on the VE's testimony.

---

[3] The description for the job of furniture rental clerk indicates that it may require a good deal of standing and walking.  Specifically, it requires guiding customers through showrooms.  *DOT 295.357-018 Furniture-Rental Consultant*, 1991 WL 672589 (Jan. 1, 2016).  However, the ALJ's inclusion of this job at step five is no more than harmless error because she identified two other jobs that exist in significant numbers in the national economy.  The jobs of cashier II and router total 911,500 jobs nationally.  AR at 20.  This number amply establishes the availability of jobs in significant numbers in the national economy.  *See Evans v. Colvin*, 640 F. App'x 731, 735–36 (10th Cir. 2016) (unpublished) (citing cases applying harmless-error doctrine to inclusion of jobs beyond a claimant's capacity where remaining jobs totaled between 152,000 and 500,000).

    4.  *Plaintiff Establishes No Reversible Error in the Step-Five Analysis.*

Finally, Plaintiff argues that the step-five analysis was erroneous due to the failure to incorporate in the RFC a limitation to occasional reaching, handling, feeling, and fingering and a limitation to two 30-minute breaks per day to elevate her legs. *Doc. 20* at 20–21. As previously discussed, the ALJ's decision not to include these limitations in the RFC was not reversible error.

## VI.   CONCLUSION

    For the foregoing reasons, the Court finds that the ALJ's decision to deny Plaintiff's applications for SSDI and SSI was supported by substantial evidence and not legally erroneous. Therefore, the Court hereby DENIES Plaintiff's Motion to Reverse and Remand (*doc. 20*) and AFFIRMS the Commissioner's decision.

    **IT IS SO ORDERED.**

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**